UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John N. Schmidt,                                    Civil No. 10-706 (DSD/FLN)

      Plaintiff,

      v.                                         **REPORT AND
RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.

---

Edward C. Olson for Plaintiff
Lonnie F. Bryan, Assistant United States Attorney, for the Government

---

     **THIS MATTER** came before the undersigned United States Magistrate Judge on the Plaintiff's and Defendant's cross motions for Summary Judgment.  (ECF Nos. 16, 23.)  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72, and this Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g).

     In this action, Plaintiff John N. Schmidt ("Plaintiff") seeks judicial review of the final decision of the Defendant, Commissioner of Social Security, denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i) and 423 ("the Act").  For the reasons set forth below, the Court recommends that Plaintiff's Motion for Summary Judgment be denied and that the decision of the Commissioner be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

    **I.**    **PROCEDURAL HISTORY**

On October 21, 2005, Plaintiff filed an application for disability insurance benefits.  (Tr. 100-104.)  Plaintiff alleged disability beginning as of September 12, 2005. (Tr. 100.)  Plaintiff's application was denied initially on March 21, 2006 and denied on reconsideration on June 21, 2006.  (Tr. 60, 66.)  Plaintiff then filed a request for a hearing.  (Tr. 70.)  An administrative hearing was conducted on January 31, 2008 in Minneapolis.  (Tr. 10, 21.)  On May 20, 2008, the administrative law judge (ALJ) issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 7-18.)  On January 29, 2010, the Appeals Council denied Plaintiff's request for review.  (Tr. 2-5.)

## II.     FACTS

### a.  Background

Plaintiff was sixty-three years old on the date of the ALJ's decision.  (*See* Tr. 100.)  Plaintiff has a high school education and additional training as an aerial photography interpreter.  (Tr. 138, 244.)  Plaintiff last worked as a documentation specialist at Silver King, Incorporated, from January 1998 until September 2005.  (Tr. 30, 114.)  Plaintiff was fired from this job for allegedly having pornography on his computer.  (Tr. 30, 220, 244.)  Plaintiff has not applied for any jobs since this termination.  (Tr. 30.)

### b.  Medical Evidence – Mental Impairments

Plaintiff's impairments at issue are psychological.   Plaintiff received mental health treatment from various VA Medical Center doctors from 2004 through 2008.  On October 6, 2004, Dr. Lisa Drogemuller examined Plaintiff.  (Tr. 270.)  Dr. Drogemuller diagnosed Plaintiff with Depression NOS (Tr. 270), also known as Depressive Disorder Not Otherwise Specified.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*

350 (4th ed. 1994) [hereinafter *DSM-IV*].[1]  Dr. Drogemuller also diagnosed Post Traumatic Stress Disorder ("PTSD") in partial remission.  (Tr. 270.)

In January 2005, Plaintiff saw VA Medical Center psychiatrist Dr. Alford Karayusuf. Dr. Karayusuf reported that Plaintiff was doing well on Serzone (also known as nefazodone) at 300mg.  (Tr. 233.)  Dr. Karayusuf reported that Plaintiff looked "moderately depressed."  Dr. Karayusuf noted that Plaintiff said he was negatively impacted by the winter season (shorter days, overcast skies), and that perhaps his mood was somewhat due to the season.  (*See* Tr. 233.)

In April 2005, Plaintiff saw Dr. Drogemuller again.  (Tr. 229.)  Dr. Drogemuller reported that Plaintiff was doing reasonably well overall.  (Tr. 229.)  She reported that Plaintiff's mood was steadier and less irritable.  (Tr. 229.)  Plaintiff stated that he believed the nefazodone was beneficial.  (Tr. 229.)  Dr. Drogemuller noted Plaintiff's good grooming and hygiene.  (Tr. 229.) She also reported that Plaintiff continued to experience irritability and mild anxiety.  (Tr. 229.)

In June 2005, Plaintiff saw Dr. Karayusuf again.  (Tr. 226.)  Dr. Karayusuf reported that Plaintiff was doing well on Serzone.  (Tr. 226.)  Plaintiff reported improved mood and motivation.  (Tr. 226.)

In September 2005, Plaintiff saw Dr. Karayusuf again.  (Tr. 225.)  Plaintiff reported struggling with family conflicts.  Plaintiff stated he was sleeping with difficulty and found it difficult to get out of bed each morning.  (Tr. 225.)  Plaintiff told Dr. Karayusuf that he was falsely accused of having "inappropriate material" on his work computer and was on the verge of losing his job.  (Tr. 225.)  Plaintiff reported that he had killed his pet parrot in a fit of rage.  (Tr. 225.)  Dr. Karayusuf noted that Plaintiff's mood was moderately to severely depressed.  Dr.

---

[1] Depression NOS is not Major Depressive Disorder, Adjustment Disorder with Depressed Mood, or any other named mood disorder.  *See* DSM-IV 350.

Karayusuf recommended hospitalization given the severity of depression.  (Tr. 226.)  Plaintiff declined that recommendation.  (Tr. 226.)  Dr. Karayusuf prescribed a reduction in Serzone to 200 mg.  (Tr. 226.)  One week after this exam, Plaintiff again saw Dr. Karayusuf.  Plaintiff reported that he had filed for unemployment.  Dr. Karayusuf noted that Plaintiff appeared moderately depressed.  (Tr. 225.)  Plaintiff noted no ill effects from the Serzone reduction.  (Tr. 225.)

Plaintiff next saw Dr. Karayusuf on November 2, 2005.  (Tr. 222.)  Dr. Karayusuf noted that Plaintiff had switched medication and was doing "about the same" as when he was on Serzone.  (Tr. 222.)  Plaintiff stated that he felt better not having the stress of employment.  (Tr. 222.)  Dr. Karayusuf reported that Plaintiff's mood was "very mildly depressed."  (Tr. 222.)  Later that month, Plaintiff saw Dr. Philip Sarff.  (Tr. 213-21.)  Dr. Sarff conducted a Compensation and Pension Examination, specifically an Initial Evaluation for PTSD.  (Tr. 213.)  Dr. Sarff diagnosed Plaintiff with major depressive disorder, characterizing the disorder as "recurrent, mild."  (Tr. 219.)  Dr. Sarff also diagnosed Plaintiff with chronic PTSD.  (Tr. 219.)  Dr. Sarff concluded that Plaintiff had a Global Assessment of Functioning ("GAF")[2] of 59.[3]  (Tr. 219.)

In December 2005, Plaintiff returned to Dr. Karayusuf.  Plaintiff told Dr. Karayusuf that his new medication was working effectively in controlling his depression.  (Tr. 277.)  Plaintiff reported sleeping well.  (Tr. 277.)  Dr. Karayusuf reported that Plaintiff's mood was mildly depressed and recommended that Plaintiff return in three months for a follow-up visit.  (Tr. 277.)

---

[2] GAF indicated the clinician's judgment of the individual's overall level of functioning.  DSM-IV 30.  GAF "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure."  *Id.*
[3] A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social or occupational functioning.  DSM-IV 32.

In March 2006, psychologist Donald Wiger, Ph.D., performed a consultative examination of Plaintiff. (Tr. 244-47.) Dr. Wiger reported that Plaintiff did not appear to be depressed, anxious, or irritable. Dr. Wiger reported normal thought processes, attention, concentration, memory, and judgment. (Tr. 246.) Dr. Wiger diagnosed Plaintiff with PTSD; a history of major depressive disorder, symptoms currently mild to moderate; and, generalized anxiety disorder. (Tr. 247.) Dr. Wiger opined that Plaintiff was able to understand directions and carry out mental tasks with reasonable persistence and pace. (Tr. 247.) Dr. Wiger further opined that Plaintiff's response to other people is mixed and that he may have some difficulty with authority figures. (Tr. 247.) Dr. Wiger opined that Plaintiff would be able to handle the stressors of a low stress environment. (Tr. 247.) Dr. Wiger concluded that Plaintiff's GAF was in the lower 50's. (Tr. 247.)

On March 17, 2006, Dr. Patrick Shields completed a Psychiatric Review Technique Form regarding Plaintiff. Completion of this form is mandatory in disability claims involving mental impairments. *See Pratt v. Sullivan*, 956 F.2d 830, 834 (8th Cir. 1992); 20 C.F.R. § 1520a(d-e). The information provided in this form is used in making a decision for Social Security claims. *See* 20 C.F.R. § 1520a(d-e). Dr. Shields concluded that Plaintiff retained the functional capacity to do the following: (1) concentrate on, understand, and remember routine, repetitive instructions, but would have marked problems with both detailed and complex instructions; (2) carry out routine, repetitive tasks with adequate persistence and pace; (3) interact and get along with co-workers and the public for brief, infrequent and superficial contact; (4) accept supervision if supervisor does not initiate frequent or close contact; (5) sustain an ordinary routine without special supervision; and, (6) tolerate the stress of a routine, repetitive work setting. (Tr. 264.)

Plaintiff saw Dr. Drogemuller again in April 2006.  Plaintiff reported panic attacks two to three times per week.  (Tr. 292.)  Plaintiff stated he was sleeping twelve hours per day, napping, and feeling fatigued.  (Tr. 292.)  Dr. Drogemuller noted that Plaintiff was calm and cooperative, but his mood was depressed and irritable.  (Tr. 293.)  She increased Plaintiff's Citalopram medication.  (Tr. 293.)  Dr. Drogemuller noted a GAF of 60.  (Tr. 294.)

Plaintiff next visited Dr. Drogemuller in May 2006.  Dr. Drogemuller noted that Plaintiff was depressed, irritable, and exhibited neurovegetative symptoms.  (Tr. 487.)  Two weeks later, Dr. Drogemuller noted that despite Plaintiff's statement that "little had changed" since their last appointment, Plaintiff "appear[ed] brighter."  (Tr. 487.)

Plaintiff returned to Dr. Karayusuf in June 2006.  (Tr. 481.)  Plaintiff reported a lack of motivation.  (Tr. 481.)  Dr. Karayusuf noted that Plaintiff's affect was a "bit subdued" and his mood "mildly to moderately depressed."  (Tr. 481.)

One day after last seeing Dr. Karayusuf, Plaintiff began a series of visits to John Billig, Ph.D.  On his first visit, Dr. Billig assessed Plaintiff with a GAF of 60.  (Tr. 480.)  Dr. Billig noted Plaintiff's preoccupation "with compensation seeking and increasing disability monies."  (Tr. 480.)  Dr. Billig diagnosed Plaintiff with PTSD and Depression NOS.  (Tr. 480.)

Plaintiff saw Dr. Drogemuller again in September 2006.  (Tr. 471.)  Around this time, Plaintiff began receiving veteran's disability benefits.  (Tr. 471.)  Plaintiff noted that he was grateful that his finances were no longer an additional stressor.  (Tr. 471.)  Dr. Drogemuller noted that Plaintiff's mood was "improved, less depressed, less anxious, [and] less irritable overall."  (Tr. 471.)

Plaintiff again visited Dr. Billig in September, October, November and December 2006. At each of these visits, Dr. Billig noted a GAF of 60; normal mood, affect, and thought content;

rigid, goal oriented thought processes; and reaffirmed his diagnosis of PTSD and Depression NOS.  (Tr. 452, 455, 457, 460, 467, 469.)  In the November and December sessions, Plaintiff reported beginning to do positive actions that he did not want to do, but that he knew were for his own benefit.  (*See* Tr. 451, 457.)

Plaintiff reported to Dr. Drogemuller in January 2007.  Plaintiff noted that his holiday season had been surprisingly enjoyable.  (Tr. 446.)  Plaintiff offered several theories for his improved attitude, including less financial stress, therapist support, and greater interaction with friends and family.  (Tr. 446.)

Plaintiff visited Dr. Billig in February, March, June, and July 2007.  From February to June, Dr. Billig noted a GAF of 65;[4] normal mood, affect, and thought content; rigid, goal oriented thought processes; and reaffirmed his diagnosis of PTSD and Depression NOS.  (Tr. 382, 109, 428, 434-35, 504-05.)  In July 2007, Dr. Billig reported an increased GAF of 75.[5]  Dr. Billig reported:

> Patient is making progress since receiving SC disability and participating in individual psychotherapy.  Mood is brighter.  He is more actively engaged with others and beginning to participate in meaningful activities.  He is moving toward making more choices in his life based on values rather than efforts to control or avoid emotional discomfort.  He is ready to transition to less frequent check-ins with psychotherapist and medication providers.

(Tr. 366.)  Dr. Billig suggested that the next treatment plan review would be in January 2008. (Tr. 366.)  Plaintiff agreed with this suggestion.  (Tr. 366.)

Dr. Billig completed a residual functional capacity (RFC) form regarding Plaintiff in February 2008.  (Tr. 517-22.)  The form required Dr. Billig to evaluate the degree of Plaintiff's

---

[4] A GAF of 61-70 indicates some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social or occupational functioning, but generally functioning well with some meaningful interpersonal relationships.  DSM-IV 32.

[5] A GAF of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psychological stressors (e.g., difficulty concentrating after family argument); there is no more than slight impairment in social or occupational functioning.  DSM-IV 32.

mental abilities on the following five-step scale: (1) unlimited or very good; (2) limited but satisfactory; (3) seriously limited but not precluded; (4) unable to meet competitive standards; (5) no useful ability to function.  (Tr. 520-21.)  The form defines "seriously limited but not precluded" as: "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances."  (Tr. 520.)  Dr. Billig opined that Plaintiff was "seriously limited but not precluded" in the following areas: maintain regular attendance and be punctual within customary, usually strict guidelines; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; deal with stress of semiskilled and skilled work.  (Tr. 520-21.)  In all other areas of evaluation, Dr. Billig rated Plaintiff as "very good" or "limited but satisfactory."  (Tr. 520-21.)  Dr. Billig opined that Plaintiff would miss more than four days of work per month due to his impairments or treatment.  (Tr. 522.)

### c.  Plaintiff's Testimony

On January 31, 2008, Plaintiff and his attorney appeared before ALJ Roger Thomas in Minneapolis.  Plaintiff testified that he received income from the VA, as well as Social Security retirement benefits.  (Tr. 26.)  Plaintiff testified that he was able to drive.  (Tr. 27.)  Plaintiff testified that he experiences panic attacks "three times every two weeks."  (Tr. 27.)  Plaintiff testified that he is able to dress, cook, clean, and generally take care of his home and pets.  (Tr. 29, 33.)  Plaintiff testified that while he fears dying alone, he has difficulty making friends.  (Tr. 34-35.)  The ALJ read from a March 2007 doctor's report that characterized Plaintiff as someone who is "doing pretty well," with a "stable mood," and who "feels good with the way his life is

right now…"  (Tr.  37.)  Plaintiff stated that the report was a fair characterization of his condition.  (Tr. 37.)  Plaintiff testified that he had manageable diabetes treated with oral medication. (Tr. 37-38.)  Plaintiff testified that he required reading glasses.  (Tr. 37.)  The ALJ asked Plaintiff if he would be capable of lifting fifty pounds.  (Tr. 39.)  Plaintiff responded that he could.  (Tr. 39.)  On questioning from his attorney, Plaintiff testified that returning to work would be a significant and "scary" change that would increase his stressors.  (*See* Tr. 40-41.)

### d.  Vocational Expert's Testimony

Steven Bosch testified as an impartial vocational expert ("VE") at the January 31 hearing. (Tr. 45.)  The ALJ posed a hypothetical to the VE.  The ALJ asked the VE to consider Plaintiff's age, education, and past work history.  The ALJ further instructed the VE to consider Plaintiff's medical impairments, including diabetes, required reading glasses, hypertension, obesity, past smoker, and past alcohol abuse.  (Tr. 46-47.)  The ALJ then advised the VE as to Plaintiff's psychiatric diagnoses, including PTSD, and depression characterized as either depression or major depressive disorder.  (Tr. 47.)  The ALJ advised the VE of Plaintiff's limitations resulting from the psychiatric diagnoses, including a mixed response to other people, difficulty with authority figures, and the need for a low stress environment.  (Tr. 47.)  The ALJ then gave the VE some "structure" as to the limitations, limiting Plaintiff to a low stress environment, semi-skilled work, and a prescription on high production standards, goals or weekly quotas.  (Tr. 47-48.)  Before answering the hypothetical, the VE testified that there was no specific title in the Dictionary of Occupational Titles (DOT) for Plaintiff's past position of "Document Specialist."  (Tr. 46.)  The VE stated that based on the essential functions of Plaintiff's job, he believed that "Data Entry Clerk" was an appropriate description of Plaintiff's past employment.  (Tr. 46.)  Responding to the hypothetical, the VE opined that Plaintiff would

not be able to do his past "Document Specialist" position because of high production goals and intense interaction with others. (Tr. 48.) The VE then opined that Plaintiff could do other data entry work that fit the ALJ's hypothetical. (Tr. 48.) The VE testified that there would be "little vocational adjustment" for Plaintiff to perform a data entry clerk position. (Tr. 49.) The VE also testified that Plaintiff could work as an "office helper" or as a housekeeper/cleaner. (Tr. 48, 50.) In response to questioning from Plaintiff's attorney, the VE testified that if Plaintiff were absent more than two days per month it would "preclude competitive employment." (Tr. 51.)

### e. The ALJ's Decision

To determine whether Plaintiff was disabled, the ALJ followed the five-step sequential process outlined in 20 C.F.R. § 404.1520 ("the Evaluation"). In analyzing the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset of his disability on September 12, 2005. (Tr. 12.)

Step two in the Evaluation requires the ALJ to determine whether Plaintiff had a severe impairment, defined as an impairment that significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 1520. The ALJ found that Plaintiff was severely impaired by PTSD, depression NOS, and "personality traits." (Tr. 12.)

Step three in the Evaluation requires a comparison of the claimant's severe impairments with the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ determined that Plaintiff's impairments, or combination of impairments, were not characterized by findings that met or equaled the criteria of a listed impairment. (Tr. 13.)

To evaluate the Plaintiff's mental impairments, the ALJ considered the Disability Evaluation Under Social Security, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. A mental impairment is sufficiently severe to lead to automatic payment of SSI benefits when the mental

impairment results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or, repeated episodes of decompensation, each of extended duration. *Id.*; *see also Hilkemeyer v. Barnhart*, 380 F.3d 441, 446 (8th Cir. 2004).  The ALJ found that Plaintiff has mild restriction in activities of daily living.  (Tr. 12.)  The ALJ found that Plaintiff "engages in independent personal cares on a regular basis," performs "a wide range of household chores," and "cares for a number of pets."  (Tr. 13.)  In social functioning, the ALJ found that Plaintiff has moderate difficulties.  (Tr. 13.)  The ALJ found that Plaintiff "has a history of interpersonal difficulties" in the workplace.  (Tr. 13.)  The ALJ also found, however, that with therapy Plaintiff "has regained a fairly active level of social functioning with renewed relationships with family and friends…."  (Tr. 13.)  In terms of concentration, persistence or pace, the ALJ noted that Plaintiff has moderate difficulties.  (Tr. 13.)  The ALJ noted that Plaintiff struggles with meeting the demands of strict work rules.  (Tr. 13.)  The ALJ found that Plaintiff's struggles in this regard exacerbated both his depression and anxiety.  (Tr. 13.)  The ALJ stated that the increased depression and anxiety diminish Plaintiff's ability to concentrate and focus.  (Tr. 13.)  As for decompensation, the ALJ reported that Plaintiff has experienced no episodes.  (Tr. 13.)  The ALJ noted that Plaintiff has not been hospitalized for psychiatric care since 1997.  (Tr. 13.)  Based on the foregoing, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 13.)

The last two steps of the Evaluation require the ALJ to determine whether the Plaintiff has the residual functional capacity (RFC) to perform his past relevant work, or lastly, any other work existing in significant numbers in the national economy.  The ALJ considered the entire

record, concluding that the Plaintiff has the RFC to perform "routine, repetitive instructions and tasks in semi-skilled or lower work in a low stress environment without high production goals or quotas and only routine stressors and requiring only brief, infrequent and superficial contact and no frequent contacts with supervisors." (Tr. 14.) The ALJ stated that he considered all symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence in making this finding. (Tr. 14.) Based on this RFC, the testimony of the VE, and Plaintiff's age, education, and work experience, the ALJ concluded Plaintiff is capable of performing his past relevant work as a data entry clerk "as generally performed." (Tr. 17-18.) Based on the foregoing, the ALJ found that Plaintiff has not been under a disability as defined in the Act. (Tr. 18.)

## III.    STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*; 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Jackson v. Apfel*, 162 F.3d 383, 385 (8th Cir. 1998); *Black v. Apfel*; 143 F.3d 383, 385 (8th Cir. 1998). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (*citing Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

A court, however, "may not reverse merely because substantial evidence would have supported an opposite decision." *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) (internal citations omitted); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). Our review of the ALJ's factual determinations is therefore deferential, and this court will not re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

## IV.   CONCLUSIONS OF LAW

Plaintiff does not challenge the ALJ's decisions in steps one through three. Plaintiff's challenges are limited to the final two steps: the ALJ's determination of residual functional capacity, and whether Plaintiff was capable of performing his previous work or any other work existing in significant numbers in the national economy.

### a.   The ALJ properly weighed the evidence in formulating Plaintiff's RFC.

#### i. The ALJ was entitled to discount Dr. Billig's "check-off" form as not entitled to controlling weight.

Plaintiff argues that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because Dr. Billig's opinion regarding Plaintiff's RFC was not given controlling weight. Plaintiff refers to Dr. Billig's RFC opinion as expressed on a "check-off form," completed in February 2008. (Tr. 518-22.) Plaintiff claims that the ALJ failed to give controlling weight to Dr. Billig's opinion that Plaintiff's abilities in several areas, including attendance, interacting appropriately with supervisors and co-workers, and ability to handle workplace stress were "seriously limited and less than satisfactory."[6] (Pl.'s Mot. Summ. J. 14.) Plaintiff cites to 20 C.F.R. § 1527 which states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically

---

[6] Dr. Billig's check-off form actually characterizes these abilities as "seriously limited *but not precluded*." (Tr. 520 [emphasis added].)

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  It is undisputed that Dr. Billig was a treating source.

Although a treating physician's opinion is generally entitled to substantial weight, this opinion does not automatically control.  *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (citation omitted).  Rather, the ALJ must evaluate the record as a whole.  *Id.*  "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record."  *Id.* (*quoting Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000)).

The Eighth Circuit has upheld an ALJ's decision to discount the opinion of a treating physician if that opinion is inconsistent with the record as a whole, or inconsistent with other opinions by the same treating physician.  *See Travis v. Astrue*, 477 F.3d 1037 (8th Cir. 2007) (upholding the ALJ's decision not to give controlling weight to the opinions of claimants treating physicians, as those opinions were inconsistent with the record as a whole); *Wagner*, 499 F.3d at 850 (upholding the ALJ's decision to discount the 2004 opinion of claimant's treating physician because that opinion was inconsistent with both his previous (2003) and subsequent (2005) opinions).

In the instant case, the ALJ "did not place controlling weight on the check-off form of Dr. Billig in exhibit 18F[7] noting moderate limitations in meeting the mental demands of work and estimating absences from work in excess of three times per month."  (Tr. 17.)  The ALJ reviewed Dr. Billig's treatment notes, finding that the notes "lack[ed] the severe findings since 2006 to support [Dr. Billig's] opinion at exhibit 18F."  (Tr. 17.)  Between 2006 and 2008 Dr. Billig had provided Plaintiff with continuously improving GAF scores of 60-75.  A GAF score

---

[7] "Exhibit 18F" is found at: Tr. 518-22; ECF No. 10, Attach. 9.

of 71-80 indicates "there is no more than slight impairment in social or occupational functioning." DSM-IV 32.   In comparing the check-off form to Dr. Billig's treatment notes, the ALJ considered the notes "inherently more reliable [because] they were produced in the course of treatment for the purpose of treatment." (Tr. 17.)

In determining Plaintiffs RFC and the weight to attribute to Dr. Billig's opinion, the ALJ also considered the record as a whole, including the opinions of Drs. Drogemuller, Karayusuf, Sarff, and Wiger. (Tr. 15-17.)   The ALJ determined that the record as a whole shows Plaintiff's improvement in overall social functioning since 2006.   (Tr. 17.)   All doctors consistently reported GAFs within 60 or greater since 2006. (Tr, 17.)   The ALJ found that in January 2007, Plainitff had "increased social engagement with family and friends" and that Plaintiff's irritability and anger were infrequent and manageable. (Tr. 17.)   The ALJ found that in March 2007, Plaintiff maintained a stable mood despite the death of a relative. (Tr. 17.)   The ALJ found that by July 2007, Plaintiff was making progress to better his life and was remaining socially active. (Tr. 17.)   This Court concludes, consistent with *Travis* and *Wagner*, that the ALJ was entitled to discount Dr. Billig's check-off form to the extent it was inconsistent with Dr. Billig's treatment notes and other medical evidence on the record as a whole.   Based on these sources, the ALJ gave appropriate weight to the opinion of Dr. Billig in forming Plaintiff's RFC.

### ii.        The ALJ was not required to re-contact Dr. Billig.

Plaintiff argues that the ALJ should have re-contacted Dr. Billig to clear up any inconsistencies or ambiguities in Dr. Billig's report.   Plaintiff cites to 20 C.F.R. § 404.1512(e)(1), which states:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not

appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

Prior to this passage, the same regulation states that re-contacting is necessary "[w]hen the evidence we receive from your treating physician or psychologist or other medical source *is inadequate for us to determine whether you are disabled*…."  20 C.F.R. § 404.1512(e) [emphasis added].  The ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.  *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).  In *Goff*, the ALJ did not find the doctors' records inadequate, unclear, incomplete, or based on unacceptable clinical and laboratory techniques.  *Id.*  Instead, the ALJ discounted the opinions because they were inconsistent with other substantial evidence.  *Id.*  "In such cases, an ALJ may discount an opinion without seeking clarification."  *Id.*

Similarly here, the ALJ did not discount Dr. Billig's opinion because it was inadequate, unclear, incomplete, or based on unacceptable clinical and laboratory techniques.  Like *Goff*, the ALJ discounted Dr. Billig's check-off form because it was inconsistent with other substantial evidence.  The ALJ did not need to contact Dr. Billig for additional information.

### b.  The ALJ's hypothetical to the VE was proper.

Plaintiff argues that because the RFC did not give adequate weight to Dr. Billig's opinion, the RFC was improper.  Plaintiff argues that because the RFC was improper, the VE's responses to the ALJ's hypothetical cannot constitute substantial evidence.  The Plaintiff's argument fails for two reasons.  First, as discussed above, the ALJ gave appropriate weight to Dr. Billig's opinion.  Second, the hypothetical accounts for all of Plaintiff's proven impairments.

Questions posed to a VE should precisely set out the claimant's particular physical and mental impairments. *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994) (citation omitted). The hypothetical does not have to "frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (*quoting Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole. *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005) (citations omitted). The hypothetical question, however, need only include impairments the ALJ accepts as true. *Id.* (*citing Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir.1991)); *see also Hulsey* 622 F.3d at 922 (a VE's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's *proven* impairments [emphasis added]).

In his hypothetical, the ALJ asked the VE to consider Plaintiff's age, education, and past work history. The ALJ further instructed the VE to consider Plaintiff's medical impairments, including: diabetes required reading glasses, hypertension, obesity, past smoker, and past alcohol abuse. (Tr. 46-47.) The ALJ then advised the VE as to Plaintiff's psychiatric diagnoses, including PTSD, and depression characterized as either depression or major depressive disorder. (Tr. 47.) The ALJ advised the VE of Plaintiff's limitations resulting from the psychiatric diagnoses, including a mixed response to other people, difficulty with authority figures, and the need for a low stress environment. (Tr. 47.) The ALJ then gave the VE some "structure" as to the limitations, limiting Plaintiff to a low stress environment, semi-skilled work, and a proscription on high production standards, goals or weekly quotas. (Tr. 47-48.)

Plaintiff argues that "when limitations more consistent with the residual functional capacity opinion of Dr. Billig were included in the hypothetical…, the VE [testified] that such an individual" would be precluded from competitive employment.  (Pl.'s Mot. Summ. J. 17; ECF No. 16.)  Plaintiff's brief does not explicitly state how the ALJ's hypothetical should have been phrased to account for Dr. Billig's opinion.  When given the opportunity to examine the VE, Plaintiff alluded to only one item that could plausibly be "more consistent with the residual functional capacity opinion of Dr. Billig."  Presumably, Plaintiff refers to the following exchange at the ALJ hearing:

> Plaintiff's Attorney: And if it [i.e., Plaintiff's limitations] affected his ability to attend and he was absent more than two days per month?

> Vocational Expert: That would preclude competitive employment.

(Tr. 51.)[8]

The ALJ need only consider *proven* impairments when forming the hypothetical, i.e. impairments that the ALJ accepts as true.  The only evidence that supports the proposition that Plaintiff would miss work because of mental impariments is Dr. Billig's check-off form (*See* Tr. 520.)  As noted above, the ALJ was entitled not to put controlling weight on this form.  Because the ALJ properly discounted Dr. Billig's form, the ALJ was not required to incorporate data from the form in his hypothetical.

### c.  The ALJ's determination that Plaintiff can return to past relevant work is supported by substantial evidence.

---

[8] In examining the VE, Plainitiff's attorney refers to limitations supposedly referred to by Dr. Karayusuf and does not mention Dr. Billig.  (Tr. 51.)  In examining the records of Dr. Billig, Dr. Karayusuf, Plaintiff's brief, and testimony from the ALJ hearing, this Court can only presume that the missing piece of the hypothetical, in Plaintiff's view, is the reference to Plaintiff's potential absences from work.

Plaintiff argues that the ALJ erred at step four in the Evaluation in determining that Plaintiff could return to past relevant work.  The VE testified that Plaintiff could not return to his job as "Document Specialist" because it exceeded the RFC.  The VE also testified that "Document Specialist" was contained within the broader job title of "data entry clerk" and Plaintiff could return to work as a data entry clerk.  Plaintiff contends that the VE testified that "data entry clerk" was *different* work, and because he could not return to his exact past job, the ALJ may not find that he can return to past relevant work.  Plaintiff argues that because he could not perform past relevant work, the ALJ improperly stopped the Evaluation and should have proceeded to step five.  This Court finds that the ALJ's determination at step four is supported by substantial evidence on the record.

The claimant carries the burden of establishing that she is unable to perform her past relevant work.  *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001).  To determine if there are jobs suitable in the national economy for a claimant, the ALJ will take notice of the job titles listed in the DOT.  *See Stephens v. Shalala*, 50 F.3d 538 (8th Cir. 1995) (*citing* 20 C.F.R. § 404.1566(d)(1)).  An ALJ may find a claimant able to perform past relevant work if the claimant retains the ability to perform the functional requirements of the job as he actually performed it or as generally required by employers in the national economy.  *Samons v. Astrue*, 497 F.3d 813, 821 (8th Cir. 2007) (*citing Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)).  According to the Secretary's interpretation of past relevant work,

> [A] claimant will be found to be "not disabled" when it is determined that he or she retains the [residual functional capacity] to perform: 1. The actual functional demands and job duties of a particular past relevant job; *or* 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. § 404.1520(e) [emphasis added].  Section 404.1520 sets out a two part test.  If the claimant is able to perform under either prong of the test, the claimant is not disabled.  *See Martin*, 901 F.2d at 653 (holding that a claimant who cannot perform a particular past job may still be able to perform past relevant work under the second part of the test).  Therefore, where the ALJ finds a claimant can carry out his past job as performed generally within the national economy, the claimant is not disabled under the regulations even where he cannot perform the actual demands of his particular past job.  *Evans v. Shalala*, 21 F.3d 832, 833 (8th Cir. 1994).

The VE testified that while Plaintiff's past job of "Document Specialist" was not a job title listed in the DOT, the VE believed that the job "data entry clerk" best described Plaintiff's past relevant work.  (Tr. 46.)  The VE then testified that based on the ALJ's RFC, Plaintiff could not return to his particular position as Document Specialist.  (Tr. 48.)  The VE testified that although Plaintiff could not return to his particular past job, there was other data entry work available that Plaintiff could perform that was consistent with the RFC.  (*See* Tr. 48.)  Based on the VE's testimony, the ALJ found that Plaintiff could perform his past work "as the job is generally performed in the national economy."  (Tr. 18.)  This Court finds that the ALJ correctly interpreted the VE's testimony in concluding that Plaintiff's past relevant work as generally performed in the economy was "data entry clerk," and not, as Plaintiff contends, a different job limited to "document specialist."

If the claimant can perform past relevant work, he is not disabled.  *Morse v. Shalala*, 16 F.3d 865, 871 (8th Cir. 1994).  An ALJ may rely on VE testimony as substantial evidence to determine a claimant may return to past relevant work.  *See Wildman v. Astrue*, 596 F.3d 959, 969-70 (8th Cir. 2010) (holding that VE testimony and a proper RFC constituted substantial evidence for an ALJ to determine claimant could return to past relevant work).  The record

contains substantial evidence to support the ALJ's conclusion that Plaintiff could return to past relevant work and is therefore not disabled under the Act.

Once a court has found that there is substantial evidence on the record as a whole to support the ALJ's decision concerning a claimant's disability, the five-step analysis need go no further.  *Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003).  Because substantial evidence supported the ALJ's step four finding, the ALJ was not required to continue to step five and shift the burden to the Commissioner.

In conclusion, because the ALJ's determination is support by substantial evidence on the record, the Commissioner's decision to deny benefits should be affirmed.

## V.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Motion for Summary Judgment (ECF No. 16) be **DENIED**;

2.  Defendant's Motion for Summary Judgment (ECF No. 23) be **GRANTED**;

3.  The Commissioner's decision be **AFFIRMED** and the case **DISMISSED WITH PREJUDICE**; and

4.  **JUDGMENT BE ENTERED ACCORDINGLY**.


DATED: May 25, 2011                         *s/ Franklin L. Noel*
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before June 8, 2011, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting partys brief within 14 days after service thereof.  All briefs filed under the rules shall be limited

to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.